IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD V. BERG,**

    **Plaintiff,**

                                Case No. 2:17-cv-820

    v.                       Chief Magistrate Judge Elizabeth P. Deavers

**STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

This action involves an insurance coverage dispute arising from a motor vehicle accident. With the full consent of the parties (ECF Nos. 6, 8), 28 U.S.C. § 636, this matter is before the Court for consideration of Plaintiff's Motion for Partial Summary Judgment (ECF No. 22), Defendant State Farm Mutual Automobile Insurance Company's Memorandum in Opposition (ECF No. 27),[1] and Plaintiff's Reply Memorandum (ECF No. 28). The Court also considers Defendant State Farm Mutual Automobile Insurance Company's Sur-reply (ECF No. 29) and Plaintiff's Motion to Strike Sur-reply (ECF No. 30). For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Plaintiff's Motion to Strike is **DENIED AS MOOT**.

---

[1] Defendants Kylie Manley and Bobbie David were dismissed without prejudice on January 23, 2019. (ECF No. 10.)

**I.**

**A.     The 2014 Accident**

On August 16, 2014, Plaintiff Richard V. Berg was driving his vehicle to Myrtle Beach, South Carolina.  (Deposition of Richard V. Berg, ECF No. 22-2 ("Berg Depo."), at 53.)[2]  A vehicle driven by Carrie Wheeler struck Plaintiff's vehicle from behind while it was stopped at a toll booth in West Virginia, pushing Plaintiff's vehicle approximately 50 feet from the toll booth ("the 2014 accident").  (*Id*. at 55–59.)

Plaintiff and his minor daughter who was in the vehicle at the time of the 2014 accident were transported by ambulance to the Charleston Area Medical Center.  (*Id*. at 53–56, 61.)  Plaintiff's daughter did not appear to sustain any injuries in the 2014 accident while Plaintiff complained of pain in his low and mid-back, neck, and head.  (*Id*. at 61–62.).)

There is no dispute that Ms. Wheeler's negligence appears to have caused the 2014 accident.  (Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") response to Requests for Admissions, ECF No. 22-5 ("RFA"), Response No. 15.)  Ms. Wheeler was insured under policy issued by Geico Insurance Company ("Geico").  (State Farm's Answer, ECF No. 26, ¶ 6.)  Geico paid to the Plaintiff the $25,000 liability limit of the Geico policy.  (*Id*.)

**B.     The Policy**

At the time of the 2014 accident, Plaintiff had a policy of automobile insurance, policy number 3323-491-35D ("the Policy"), issued by State Farm that was in effect with premiums paid in full.  (Policy excerpt, ECF No. 22-7; RFA Response Nos. 1, 2, 3.)  The Policy provided

---

[2] The Court refers to the page numbers in the deposition transcript appearing on the upper right-hand corner of the page.

coverage with a limit of $25,000 for "reasonable expenses" for medical bills subject to all terms and conditions of the Policy. (RFA Response Nos. 4 and 5; State Farm's Answer, ¶ 4.) The Policy also contained underinsured motorist coverage ("UIM") with written limits of $50,000 for each person, subject to all terms and conditions of the Policy. (RFA Responses Nos. 6 and 7.)

More specifically, the Policy, in relevant part, provides as follows:

**Insuring Agreement**
*We* will pay:
1. *medical expenses* incurred because of *bodily injury* that is sustained by an insured and caused by a motor vehicle accident if:
   a. that *insured* is first provided *medical services* within one year immediately following the date of the accident; and
   b. such *medical expenses* are for *medical services* that are provided within three years immediately following the date of the accident; and
2. *funeral expenses* incurred for an insured who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of bodily injury sustained in such accident.

**Determining Medical Expenses**
*We* have the right to:
1. obtain and use:
   a. utilization reviews;
   b. peer reviews; and
   c. medical bill reviews
   to determine if the incurred charges are *medical expenses*;
2. use a medical examination of the *insured* to determine if:
   a. the *bodily injury* was caused by a motor vehicle accident; and
   b. the expenses incurred are *medical expenses*; and
3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

(Policy excerpt, p. 10 (emphasis in the original).)[3]

**Insuring Agreement**
1. *We* will pay compensatory damages for *bodily injury* an insured is legally entitled to recover from an *uninsured motorist*. The *bodily injury* must be:
   a. sustained by an *insured*; and

---
[3] The Court refers to the page number at the bottom center of the Policy page.

3

>   b.  caused by an accident arising out of the operation, maintenance, or use of a *motor vehicle* by an *uninsured motorist*.

(*Id*. at 14 (emphasis in the original).)

>   3.  The most we will pay for all damages resulting from bodily injury to one insured injured in any one accident, including all damages sustained by other insureds arising out of and resulting from that bodily injury, is the lesser of:
>       a.  the limit shown under "Each Person" reduced by the sum of:
>           (1) all amounts from all liability bonds, liability insurance policies, and self-insurance that are available for payment by or on behalf of any person or organization who is or may be held legally liable for the bodily injury . . .
>
>   \*          \*          \*
>
>   **Nonduplication**
>   *We* will not pay under Uninsured Motor Vehicle Coverage any damages: . .
>   2.  paid or payable under:
>       a.  Medical Payments Coverage of this policy . . .

(*Id*. at 15 –16 (emphasis in the original).)

**C.     Coverage Dispute and Medical Examination**

Plaintiff promptly notified State Farm of the 2014 accident and timely submitted claims for underinsured motorists bodily injury coverage benefits and medical payment coverage benefits to State Farm. (RFA Response Nos. 10 and 13.) On February 7, 2017, Plaintiff's counsel mailed a signed medical authorization to State Farm. (RFA Response No. 17.)

Plaintiff submitted medical bills to State Farm for processing. (RFA Response No. 20.) State Farm initially paid the medical charges, sending payment directly to the medical providers. (State Farm payment log, ECF No. 22-17.)[4] State Farm later requested an independent medical evaluation to be conducted by Mark Kowalski, D.C., regarding Plaintiff's injuries sustained in

---

[4] The Court addresses Plaintiff's objections to this and other exhibits later in this Opinion and Order.

the 2014 accident. (RFA Response No. 18.) On February 11, 2016, Dr. Kowalski issued a report containing his opinions. (RFA Response No. 19; report issued by Dr. Kowalski dated February 11, 2016, ECF No. 22-19 ("the Kowalski Report").) Thereafter, State Farm paid Plaintiff's outstanding medical bills up to the date of the examination, totaling $12,500. (State Farm payment log, ECF No. 22-17.)

**D.     Procedural History**

On August 9, 2017, Plaintiff filed this action in the Franklin County Court of Common Pleas, asserting claims for breach of contract for UIM coverage, breach of contract for medical payments coverage, bad faith, and punitive damages, alleging, *inter alia*, that State Farm refused to pay the full amount of Plaintiff's medical bills. (ECF No. 3.)

On September 15, 2017, the action was removed to this Court on the basis of diversity jurisdiction. (ECF No. 1.) Following the establishment of a case schedule, the Court granted State Farm's request stay discovery on bad faith claims pending a determination of the coverage issues and denied without prejudice its request to bifurcate the bad faith cause of action for trial as premature. (ECF No. 13.)

Plaintiff has moved for partial summary judgment on the coverage issues (ECF No. 22), which State Farm opposes (ECF No. 27). After Plaintiff filed a reply memorandum (ECF No. 28), State Farm filed a sur-reply memorandum (ECF No. 29). Plaintiff has moved to strike the sur-reply. (ECF No. 30.) State Farm has not responded to Plaintiff's request to strike its sur-reply. This matter is now ripe for resolution.

**II.**

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,'. . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (citations omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

**III.**

State Farm has raised evidentiary objections (ECF No. 27 at 1–2) to Plaintiff's supporting exhibits, which the Court addresses first. In moving for partial summary judgment, Plaintiff attaches nineteen exhibits, including his deposition transcript, an excerpt of the Policy, State Farm's RFA responses, copy of the crash report from the 2014 accident, letters from State Farm and Geico, photos of damage to Plaintiff's vehicle, State Farm payment logs, copies of medical records, and the Kowalski Report. (ECF Nos. 22-2 through 22-20.) State Farm objects to all these exhibits except for Plaintiff's deposition transcript (to the extent it conveys non-expert and non-hearsay testimony within Plaintiff's personal knowledge), the excerpt of the Policy, and State Farm's RFA responses. (ECF No. 27 at 1.) State Farm contends that the remaining exhibits "consist of unsworn, hearsay materials by purported lay and expert witnesses which are inappropriate for use with a Motion for Summary Judgment as they lack the personal knowledge, admissibility, oath, and competency requirements of Fed. Civ. R. 56 and 28 USCS § 1746." (*Id.* at 1–2 (citing *Bertl v. City of Westland*, No. 07-2547, 2009 U.S. App. LEXIS 2086, 2009 WL 247907, at *3 (6th Cir. Feb. 2, 2009).).)

State Farm's argument is not well taken. In 2010, Federal Rule of Civil Procedure 56 was amended, permitting a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see also Mangum v. Repp*, 674 F. App'x 531, 536 (6th Cir. 2017) (addressing 2010 amendments to Rule 56(c)). "Once an objection is properly made, the proponent must 'show that the material is admissible as presented or . . . explain the admissible form that is anticipated.'" *Mangum*, 674 F. App'x at 536–37 (quoting Fed. R. Civ. P. 56(c)'s advisory committee's note to 2010 amendment). Notably, "Rule 56 no longer draws a clear distinction between authenticated and

unauthenticated evidence for purposes of summary judgment." *Id*. at 537. The "requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration" has been "omitted as unnecessary." Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment.

Here, Plaintiff therefore correctly argues in reply that he may support his Motion for Partial Summary Judgment with documents that are not certified or authenticated. (ECF No. 28 at 2.) Plaintiff goes on to argue that his exhibits, particularly the Kowalski Report, are admissible or would be admissible. (*Id*. at 2–4.) Notably, State Farm does not argue that Plaintiff's evidence "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see generally* ECF No. 27. Nor does State Farm deny the accuracy of what the evidence holds. *See generally* ECF No. 27; *see also Reed v. Buchanan*, No. 2:17-cv-156, 2019 WL 4319445, at *1 (W.D. Mich. Sept. 12, 2019) (finding that magistrate judge properly considered medical records on summary judgment where "there is nothing to cast any doubt on the authenticity of Plaintiff's medical records while in custody, or the ability, if necessary, to lay a foundation under Federal Rule of Evidence 803(b)" and the plaintiff did not "deny the accuracy of what the records report"). Accordingly, the Court concludes that Plaintiff's exhibits are either admissible or could be produced in admissible form at trial and State Farm's objections are therefore overruled. Fed. R. Civ. P. 56(c); *see also Mangum*, 674 F. App'x at 537 (finding that the district court did not err in considering either party's unauthenticated evidence); *Reed*, 2019 WL 4319445, at *1 (same); *Davis v. United States*, 302 F. Supp. 3d 951, 956 (S.D. Ohio 2017) (finding that Court may consider doctor's unsworn letters on summary judgment where "Defendant does not argue that the letters are incapable of being presented in admissible form" and the letters are "fully capable of being reduced to admissible form").

8

In light of the foregoing, the Court did not consider State Farm's sur-reply memorandum (ECF No. 29). Plaintiff's Motion to Strike the Sur-Reply (ECF No. 30) is therefore **DENIED AS MOOT**.

## IV.

Turning to the merits of Plaintiff's Motion for Partial Summary Judgment, Plaintiff contends that he was covered under the Policy on the date of the 2014 accident and that State Farm therefore breached the Policy when it refused to pay all of the charges for his medical bills related to the 2014 accident. (ECF No. 22-1 at 9–13.) To establish a breach of contract under Ohio law, a plaintiff must show the following four elements: "(1) that a contract existed, (2) that the plaintiff 'performed its contractual obligations,' (3) that the defendant 'failed to fulfill its contractual obligations without legal excuse,' and (4) that the plaintiff 'suffered damages as a result of the breach.'" *Norfolk Southern Railway Co. v. Allied Erecting & Dismantling Co., Inc.*, 775 F. App'x 178, 190 (6th Cir. 2019) (quoting *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 661 N.E.2d 218, 226 (1995)); *see also Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.*, 66 Ohio St.2d 32, 34 (1981) ("It is undisputed that one seeking to recover on an insurance policy generally has the burden of proving a loss and demonstrating coverage under the policy.").

Here, as set forth above, the record is undisputed that the Policy was in existence at the time of the 2014 accident, that the Policy provided coverage with a limit of $25,000 for reasonable expenses for medical bills and UIM coverage with a limit of $50,000 for each person, and that Plaintiff had paid the premiums in full. (Policy excerpt, ECF No. 22-7; RFA Response Nos. 1, 2, 3, 6, 7.) It is also undisputed that Ms. Wheeler's negligence caused the 2014 accident. (RFA Response No. 15.) The Court therefore next considers whether State Farm breached the

Policy when it refused to pay all of the medical bills submitted by Plaintiff relating to medical care for his neck, head, and back following the 2014 accident.

In support of his position that State Farm breached the Policy, Plaintiff details how he saw multiple physicians for diagnosis and treatment of injury and pain in his neck, head, and back after the 2014 accident. (ECF No. 22-1 at 4–15 (citing to medical records of General Hospital; Alex Tsai, D.O., Worthington Family Physicians; Jeff Wells, D.C., Wells Family Chiropractic; Christian Bonasso, M.D., Central Ohio Neurological Surgeons; James Natalie, III, M.D., Central Ohio Primary Care; Christopher M. Annis, M.D., attached as Plaintiff's Exhibits 9, 10, 11, 12, 13, 15, 16, 20).) A MRI of the cervical and lumbar spine performed on October 13, 2014 ("the 2014 MRI"), revealed "[d]egenerative changes of the disc with annular fissures at L4, L5 and L5-S1. Disc and osteophytes cause narrowing of the left neural foramen greater than the right at these levels. There is no stenosis of the thecal sac in the lumbar region." (MRI dated October 13, 2014, ECF No. 22-12.) Treatment for all of the injuries included medication, chiropractic adjustments, physical therapy, massage therapy, lumbar epidural steroid injections. (Plaintiff's Exhibits 9, 10, 11, 12, 13, 15, 16, 20; Berg Depo., pp. 67–68, 71–72, 74–76, 81–83.) On September 5, 2017, Dr. Annis opined that Plaintiff's "pain is related to an annular tear at L5-S1. He has done PT and this has not helped much and he is currently doing massage therapy." (OSMC record, ECF No. 22-16, PAGEID # 227.) Plaintiff testified in 2018 that the main problem persisting from the 2014 accident is his low back with pain and tingling going down his right leg. (Berg Depo., pp. 69–70.) Plaintiff stated that he still has daily low back pain that comes and goes throughout the day. (*Id*. at 84–86.)

Plaintiff acknowledges that he was in another car accident in February 2012 in which a vehicle pulling out of a parking space struck the rear passenger door of the vehicle he was

driving ("the 2012 accident"). (*Id*. at 17–18.) Plaintiff sustained injuries from the 2012 accident, including pain in his low back, mid back, groin area, neck and shoulders, and right leg. (*Id*. at 19.) A MRI of the lumbar spine in June 2012 ("the 2012 MRI") revealed small left pre-foraminal disc protrusion/herniation with mild left foraminal stenosis in T11 – T12; disc bulging and facet arthropathy with mild bilateral foraminal stenosis in L4 – L5; broad degenerative disc herniation with moderate to 1evere left and moderate right foraminal stenosis in L5 – S1; and no substantial spinal canal stenois draped. (Cleveland Clinic MRI dated June 29, 2012, ECF No. 22-20.) Plaintiff received treatment for his injuries, including massage therapy and treatment from Wells Family Chiropractic. (Berg Depo., pp. 19–24.) Plaintiff was in such treatment from February 2012 until November 2013 when he completed treatment. (*Id*. at 24.) According to Plaintiff, he no longer had any pain in his mid or low back, groin, neck, right foot, or right leg when he finished treatment and had no symptoms as of November 2013. (*Id*. at 24–26.)

Plaintiff also testified that he was in a third automobile accident in November 2017 ("the 2017 accident"). (*Id*. at 28.) In that accident, Plaintiff was stopped in his vehicle at a traffic light when a second vehicle ran a red light and hit a third vehicle, which caused the second vehicle to hit Plaintiff's vehicle head on in the front bumper. (*Id*. at 28–30.) Plaintiff sustained injuries to his right hip, right knee, right ankle, right elbow, shoulder, neck, and lower back. (*Id.* at 30.) Following the 2017 accident, Plaintiff experienced pain and numbness in his right leg and foot for which he was receiving treatment in 2018. (*Id*. at 30–32.) Plaintiff's treatment for those injuries include medication and physical therapy. (*Id*. at 33–34.) Plaintiff also testified that he did experience low back pain but no pain, numbness, or tingling in his feet or legs prior to the 2017 accident. (*Id*. at 35–37, 40.) Plaintiff testified that, prior to the 2017 accident, he was still

treating for low back pain from the injuries from the 2014 accident. (*Id*. at 36–37.) Specifically, Plaintiff received lumbar steroid injections in September and October 2017. (*Id*. at 37–38.)

Plaintiff contends that this record establishes that his neck strain and post concussive syndrome is related to the 2014 accident. (ECF No. 22-1 at 11.) Plaintiff goes on to argue that the annular fissure at L5-S1 present in the 2014 MRI and absent in the 2012 MRI along with the medical opinion that Plaintiff's pain emanates from the annular tear establish that "all" of his injuries and treatment were caused by the 2014 accident. (*Id*. at 12.) Plaintiff further notes that Dr. Kowalski, relying on medical records provided by State Farm, opined that all of Plaintiff's injuries from which he received treatment up to February 11, 2016, the date of the examination, were related to the 2014 accident. (*Id*.) Plaintiff also argues that Dr. Kowalski opined that exacerbations and remissions may occur over time. (*Id*.) Plaintiff therefore argues that all of this evidence establishes that he is entitled to summary judgment on his coverage claims. (*Id*. at 13.)

In response, State Farm contends that a genuine issues of material fact exists as to the nature and extent of the injuries and damages sustained by Plaintiff in the 2014 accident. (ECF No. 27.) State Farm points out that Plaintiff had a history of pain in his low back / lumbar region since high school. (*Id*. at 6.) Plaintiff testified that he first sought chiropractic treatment in early or mid-1990's from Johnson Chiropractic:

> Q   During what time period were you treating with Dr. Johnson, about?
>
> A   It would have ended by 2003 maybe.
>
> Q   And when did you start with them?
>
> A   Probably in high school, somewhere in the mid '90s or early '90s.
>
> Q   Was any of the treatment provided to you by Dr. Johnson, did they include your low back?

12

A  They could have.

(Berg Depo., p. 45.)  State Farm also highlights that Plaintiff's medical records reflect that in 2008, he complained of pain in his lower groin and was diagnosed with a pinched sciatic nerve and treated with a chiropractor.  (ECF No. 27 at 6 (citing medical records from Central Ohio Primary Care, ECF No. 27-1).)  Plaintiff was also diagnosed with a lumbar sprain and strain as well as sciatica in his low back in 2009.  (ECF No. 27-2 (copy of records from Johnson Chiropractic).)

State Farm notes that Plaintiff suffered injuries to his low back, mid back, neck, and shoulder from the 2012 accident.  (ECF No. 27 at 7 (citing Berg Depo., p. 19).)  State Farm points out that Plaintiff's medical records reflect that as late as September 2013, he still had this pain 75 to 100 percent of the time.  (*Id*. (citing records from Wells Family Chiropractic, No. 27-3).)  State Farm contends that "[t]here is no chart entry, record or report indicating that he had completely healed from this injury" by the time of the 2014 accident.  (*Id.*)  Notably, the records from the emergency room from the day of the 2014 accident reflects that Plaintiff advised those physicians that he already had low chronic back pain from his earlier accident.  (*Id*. (citing Charleston Area Medical Center record, ECF No. 27-4, at PAGEID # 275 ("He has had chronic low back pain, status post remote motor vehicle collision.")).)  After an examination and diagnostic tests, the following assessment was made:  "1. Motor vehicle collision, no apparent injury.  2. History of chronic lumbar pain."  (ECF No. 27-4, at PAGEID # 275.)

State Farm has adduced evidence that Plaintiff suffered injuries to his right hip, right knee, right ankle, right elbow, shoulder, neck, and lower back from the 2017 accident.  (ECF No. 27 at 8 (citing Berg Depo., pp. 28–30).)  Notably, in November 2017, Dr. Ennis noted as follows:

> He was involved in a motor vehicle collision on 18 November 2017 when a car was redirected into his car in a head-on collision. He was sitting, stopped with his foot on the brake when this occurred. *The pain that he previously had in his spine as well as the tingling and pain that he had in the right foot and leg had resolved prior to this injury.* However, since the accident, he has developed a pain in the right ankle. right lateral hip as well as groin, right shoulder and anterior chest, and right lateral neck.

(OSMC record, ECF No. 27-5, at PAGEID # 279 (emphasis added).)

State Farm contends that this evidence demonstrates that Plaintiff had a history of back, shoulder, and neck problems preceding the 2014 accident, that emergency room physicians were unable to detect any injury sustained in the 2014 accident, and that he continued to treat for pain in his neck and back until the 2017 accident in which he again claimed to sustain injuries to his neck, mid back, low back, and right leg. (ECF No. 27 at 9–10.) State Farm therefore argues that a genuine issue of material fact exists as to the extent of Plaintiff's injuries and damages related to his 2014 accident, precluding summary judgment on the coverage issue. (*Id*. at 10.)

In reply, Plaintiff insists that his own testimony, Dr. Ennis's opinion that his low back pain stems from an annular tear at L5-S1, which was not present in 2012, as well as the Kowalski Report establish that he is entitled to summary judgment on the coverage issue. (ECF No. 28 at 3–4.) Plaintiff specifically contends that "the nature and extent of Plaintiff's injuries and damages has [sic] been established" by the Kowalski Report. (*Id*. at 3.)

Plaintiff's argument is not well taken. As a preliminary matter, Plaintiff asks too much of the Kowalski Report. While Dr. Kowalski did answer in the affirmative that Plaintiff's condition was caused by the 2014 accident (ECF No. 22-19, Question No. 5) and that the type, intensity, frequency, and duration of the treatment was appropriate for the documented injuries or conditions (*id*. at Question Nos. 6, 7, and 8), Dr. Kowalski also opined that Plaintiff's condition

14

had reached pre-injury status and that no future treatment plan was recommended at that time.

He also indicated that Plaintiff suffered from a pre-existing condition:

> 10. What is the patient's prognosis? **With an injury of this nature exacerbations and remissions may occur over time.**
>
> 11. Did the patient sustain any permanent or temporary impairment as a result of the injuries sustained in the August 16 2014 accident? If so what are the nature and extent of that impairment and what are the dates during which the patient was impaired? **None noted**
>
> 12. Is the patient able to return to pre-loss activity levels including occupational duties what if any are the patients [sic] restrictions? Has the patient's condition reached preinjury status? **Yes**
>
> 13. Has the patient's condition reached preinjury status? **Yes**
>
> 14. Does the patient need further treatment relative to the injuries or conditions sustained in the August 16, 2014 accident? **No**
>
> 15. What time frame is expected for the patient's condition to stabalize relative to injury sustained in the August 16, 2014 accident? **30 to 90 days**
>
> 16. Is the current treatment plan appropriate for and consistent with the severity of the injuries or conditions? **Patient should have reached MMI 90 days after injury.**
>
> 17. Is it recommended future treatment plan appropriate for consistent with the severity of the injury or condition? **None at this time.**
>
> 18. Are there any pre-existing or concurrent medical or psychological conditions affecting the patient's recovery for the injury sustained in the August 16 2014 accident if so please explain [t]he nature of these conditions and their effect on the healing process. **Yes, Mild degenerative joint disease at L4/L5 L5/S1, Mild narrowing of the Disc and osteophyte result in mild narrowing of the neural foramina at LS/SJ[.] Mild disc space narrowing at C3/C4, C4/C5, C5/C6, C6/C7.**

(*Id*. at Question Nos. 10—18 (emphasis in the original).) Accordingly, different parts of the Kowalski Report support the positions of both Plaintiff and State Farm.

As to the remaining evidence related to the three car accidents and Plaintiff's prior medical history in the 1990's, 2008, and 2009, the Court, construing this evidence in a light most

favorable to State Farm, is unable to determine as a matter of law the extent of Plaintiff's injuries related to the 2014 accident, what medical bills are attributable to that accident, and, therefore, whether State Farm breached the Policy when it failed to pay for all of the medical bills submitted by Plaintiff and what, if any, damages Plaintiff suffered. *See Slinger v. Pendaform Co.*, Nos. 18-6187/6190, 2019 WL 3035589, at *2 (July 11, 2019) ("A cardinal rule of summary judgment is that the Court considers the facts in the light most favorable to the party opposing the motion."). Accordingly, Plaintiff is not entitled to summary judgment on his coverage claims.

## V.

For the foregoing reasons, Plaintiff's Motion to Strike Sur-reply (ECF No. 30) is **DENIED AS MOOT** and Plaintiff's Motion for Partial Summary Judgment (ECF No. 22) is **DENIED.**

The Court will schedule a status conference by separate Order.

**IT IS SO ORDERED.**


Date: September 30, 2019             /s/ *Elizabeth A. Preston Deavers*
                                    ELIZABETH A. PRESTON DEAVERS
                                    CHIEF UNITED STATES MAGISTRATE JUDGE